IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

ANDREA GOGEL,

     Plaintiff,

v.

KIA MOTORS
MANUFACTURING GEORGIA,
INC.,

     Defendant.

CIVIL ACTION FILE

NUMBER 3:14-cv-00153-TCB

## O R D E R

This case comes before the Court on the objections of Plaintiff
Andrea Gogel [127] to the final report and recommendation ("R&R")
[125] issued by Magistrate Judge Russell G. Vineyard. Gogel filed this
action against Defendant Kia Motors Manufacturing Georgia, Inc.,
alleging discrimination and retaliation in violation of the Civil Rights
Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and 42 U.S.C. § 1981
("§ 1981") [19]. Kia filed a motion for summary judgment [83], which
Gogel opposed [101]. Similarly, Gogel filed a motion for partial

summary judgment on the prima facie component of her retaliation claims Under Title VII and § 1981 and certain defenses raised by Kia [93], which Kia opposed [99]. In the R&R, Judge Vineyard recommends that Kia's motion for summary judgment be granted and that Gogel's motion for partial summary judgment be denied.

## I.    Standard of Review

### A.    Review of an R&R

A district judge has a duty to conduct a "careful and complete" review of a magistrate judge's R&R. *Williams v. Wainwright*, 681 F.2d 732, 732 (11th Cir. 1982) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 408 (5th Cir. Unit B 1982)).[1] This review may take different forms, however, depending on whether there are objections to the R&R. The district judge must "make a de novo determination of those portions of the [R&R] to which objection is made." 28 U.S.C. § 636(b)(1)(C). In contrast, those portions of the R&R to which no objection is made need

---

[1] The Eleventh Circuit has adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981, as well as all decisions issued after that date by the Unit B panel of the former Fifth Circuit. *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982); *see also United States v. Schultz*, 565 F.3d 1353, 1361 n.4 (11th Cir. 2009) (discussing the continuing validity of *Nettles*).

only be reviewed for clear error. *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006).[2]

"Parties filing objections must specifically identify those findings objected to. Frivolous, conclusive or general objections need not be considered by the district court." *Nettles*, 677 F.2d at 410 n.8. "This rule facilitates the opportunity for district judges to spend more time on matters actually contested and produces a result compatible with the purposes of the Magistrates Act." *Id.* at 410.

The district judge also has discretion to decline to consider arguments that were not raised before the magistrate judge. *Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009). Indeed, a contrary rule "would effectively nullify the magistrate judge's consideration of the

---

[2] *Macort* dealt only with the standard of review to be applied to a magistrate's factual findings, but the Supreme Court has held that there is no reason for the district court to apply a different standard to a magistrate's legal conclusions. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Thus, district courts in this circuit have routinely applied a clear-error standard to both. *See Tauber v. Barnhart*, 438 F. Supp. 2d 1366, 1373-74 (N.D. Ga. 2006) (collecting cases). This is to be contrasted with the standard of review on appeal, which distinguishes between the two. *See Monroe v. Thigpen*, 932 F.2d 1437, 1440 (11th Cir. 1991) (when a magistrate's findings of fact are adopted by the district court without objection, they are reviewed on appeal under a plain-error standard, but questions of law remain subject to de novo review).

matter and would not help to relieve the workload of the district court." *Id.* (quoting *United States v. Howell*, 231 F.3d 615, 622 (9th Cir. 2000)).

After conducting a complete and careful review of the R&R, the district judge may accept, reject or modify the magistrate judge's findings and recommendations. 28 U.S.C. § 636(b)(1)(C); *Williams*, 681 F.2d at 732. The district judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1)(C).

In this case, the Court has conducted a careful, de novo review of the R&R and Gogel's objections thereto. Having done so, the Court finds that Judge Vineyard's conclusions were correct and Gogel's objections lack merit.

## II. Discussion

### A. Standard for Summary Judgment

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). There is a "genuine" dispute as to a material fact if "the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In making this determination, "a court may not weigh conflicting evidence or make credibility determinations of its own." *Id.* Instead, the court must "view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Id.*

The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the nonmoving party would have the burden of proof at trial, there are two ways for the moving party to satisfy this initial burden. *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437-38 (11th Cir. 1991). The first is to produce "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *Id.* at 1438 (citing *Celotex*, 477 U.S. at 324). The second is to show that "there is an absence of evidence to support the nonmoving party's case." *Id.* (quoting *Celotex*, 477 U.S. at 323).

If the moving party satisfies its burden by either method, the burden shifts to the nonmoving party to show that a genuine issue remains for trial. *Id.* At this point, the nonmoving party must "'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995) (quoting *Celotex*, 477 U.S. at 324).

### B.    Objections to the R&R

In the R&R, Judge Vineyard made many findings in regards to the parties' motions for summary judgment. In addition to determining that many of Gogel's claims are time-barred, he found no direct evidence of discrimination or retaliation.[3] Therefore, Gogel's retaliation and discrimination claims could only be based upon circumstantial evidence. The R&R, however, determined that she failed to demonstrate that

_____

[3] Gogel does not contest the R&R's findings that her claims of discriminatory failures to promote are time-barred. [127] at 47.

Kia's legitimate, non-discriminatory reason for termination was pretextual.

Gogel makes various objections to the R&R. First, she argues that Kia's reason for terminating her is direct evidence of retaliation. Furthermore, she alleges that the R&R failed to take into account additional retaliatory conduct that should be analyzed under the circumstantial-evidence paradigm. Gogel also argues that Kia failed to show a legitimate non-discriminatory reason for her termination, and even if it did, she demonstrated that this reason was pretextual. Finally, Gogel objects to the R&R on the grounds that she proved sufficient facts to show a convincing mosaic of Kia's discriminatory and retaliatory intent.

Title VII prohibits discrimination in employment decisions on the basis of "race, color, religion, sex or national origin." *See* 42 U.S.C. § 2000e-2(a)(1); *see also Blue v. Dunn Constr. Co.*, 453 F. App'x 881, 883 (11th Cir. 2011). Title VII also prohibits an employer from retaliating against an employee "because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has

made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a); *see also Smithers v. Wynne*, 319 F. App'x 755, 756 (11th Cir. 2008) (per curiam) (citation omitted).

Title VII and § 1981 use the same analysis for discrimination and retaliation claims. *See Worley v. City of Lilburn*, 408 F. App'x 248, 250 (11th Cir. 2011) (per curiam) ("The elements required to establish retaliation claims under § 1981 are the same as those required for Title VII claims."). Therefore, the Court will address Gogel's Title VII discrimination and retaliation claims with her § 1981 claims.

### 1. Gogel's Termination Is Not Direct Evidence of Retaliation[4]

Gogel may establish a claim of discrimination or retaliation through either direct or circumstantial evidence. *See Van Voorhis v. Hillsborough Cty. Bd. of Cty. Comm'rs*, 512 F.3d 1296, 1300 (11th Cir. 2008) ("A plaintiff may establish a claim of illegal age discrimination through either direct evidence or circumstantial evidence."). Direct

---

[4] Gogel did not allege "direct evidence" before filing her objections to the R&R. However, the Court will still address the arguments.

evidence is evidence that, "if believed, proves [the] existence of [a] fact in issue without inference or presumption." *Burrell v. Bd. of Trs. of Ga. Military Coll.*, 125 F.3d 1390, 1393 (11th Cir. 1997. According to the Eleventh Circuit, "only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004). Specifically, Gogel contends that Kia's non-discriminatory reason for her suspension and termination is itself direct evidence of retaliation because assisting or supporting a co-worker in asserting her rights would have constituted protected activity. *See Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990) (noting that opposition clause activity can include supporting a co-worker who files a charge of discrimination).

Gogel's new argument is unavailing. The R&R states that the non-discriminatory and non-retaliatory reason for Gogel's termination was "because [Kia] lost confidence in her abilities to perform her job duties after an investigation showed that she had solicited Ledbetter to file a

charge against Kia, which was in violation of the agreement she signed on December 6, 2010." [125] at 62. This agreement provided that she would "not use [her] position to solicit or influence Team Members to make claims against [Kia]." [125] at 29.

The R&R and Kia cite to *Jones v. Flagship Int'l*, 793 F.2d 714, 728 (5th Cir. 1986), to demonstrate that terminating Gogel for soliciting her co-worker to file an EEOC charge does not constitute protected activity.[5] In determining whether the employee was lawfully terminated for engaging in a protected activity, the *Jones* court adopted a balancing test between the "employer's right to run his business . . . against the rights of the employee to express his grievances and promote his own welfare." *Id.* at 728. Ultimately the court determined that soliciting others to sue the company "not only rendered Jones ineffective in the position for which she was employed, but critically harmed Flagship's posture in the defense of discrimination suits brought against the company." *Id.*

---

[5] The Eleventh Circuit adopted the Fifth Circuit's position in *Rollins v. Fla. Dep't of Law Enforcement*, 868 F.2d 397, 401 (11th Cir. 1989).

Similar to the plaintiff in *Jones*, Gogel was responsible for investigations into discrimination and harassment; her department "worked directly with legal on EEO matters"; and "the investigation into EEO matter would be conducted by [her department] under the direction of legal." [93-2] at 3–5. Kia maintained a good-faith belief that Gogel's solicitation of Ledbetter critically "harm[ed] [Kia's] posture in the defense of discrimination suits brought against the company." *Jones*, 793 F.2d at 728. Because Kia did not terminate Gogel for engaging in protected activity, there is no direct evidence of discrimination or retaliation.[6]

---

[6] Gogel also alleges that Kia forcing her to sign the December 6 agreement and suspending her for not signing it constitutes direct and circumstantial evidence of retaliation. As already mentioned, the agreement simply prevented Gogel from taking advantage of her position with Kia in pursuing her own retaliation claims. By forcing her to sign it, Kia was balancing its interest in "employer's right to run [its] business . . . against the rights of the employee to express [her] grievances and promote [her] own welfare." *Jones*, 793 F.2d at 728. In addition, Gogel's argument that suspending her for refusing to sign the agreement constitutes direct evidence of retaliation fails. If requiring Gogel to sign the agreement did not demonstrate direct evidence of retaliation, it logically follows that suspending her for refusing to sign the agreement also cannot be considered direct evidence. Because Kia was not inhibiting any protected activity by Gogel, requiring her to sign the agreement and suspending her when she failed to do so does not demonstrate retaliatory intent without an inference or presumption. Furthermore, the suspensions and agreement cannot be considered circumstantial evidence because Gogel failed to establish a prima facie case of retaliation. *Bailey v. City of Huntsville*, 517 F. App'x 857, 861 (11th Cir. 2013) (describing what evidence is required to prove a prima facie case of

Gogel also objects to the R&R's finding that her termination was the result of Kia's good-faith belief that she solicited Ledbetter to pursue legal action against the company. Instead, Gogel argues that she can maintain a retaliation claim based on Kia's "mistaken" belief that Gogel actually solicited Ledbetter to file a charge or a lawsuit.

The Court agrees with Judge Vineyard that the question is not whether Kia was wrong in believing that Gogel solicited Ledbetter, but whether Kia, at the time it terminated her, honestly believed that Gogel had solicited Ledbetter to pursue legal action against Kia. *See Clark v. S. Broward Hosp. Dist.*, 601 F. App'x 886, 896 (11th Cir. 2015) ("[S]ignificantly, the question is not whether Plaintiff actually engaged in the alleged misconduct. Rather, it is whether the [defendant] in good faith believed the reports of misconduct.").

The cases cited by Gogel in her objections to the R&R [127] fail to persuade the Court. In those cases, the employer terminated the

retaliation). Gogel cannot show that she was prevented from "engag[ing] in statutorily protected expression" because the agreement and suspensions only hindered her from certain conduct that would cause Kia to lose trust in her ability to carry out her job, which is not "protected expression." *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008).

employee on the mistaken belief that the employee engaged in protected activity. Here, Kia believed it was terminating Gogel for an activity that was not considered protected (conduct conflicting with her job duties).

In the R&R, Judge Vineyard correctly laid out undisputed evidence showing that one could conclude that Kia honestly believed that Gogel acted in a manner sufficient to cause the company to lose confidence in the loyalty and trust of someone in her position. [125] at 68-69. Furthermore, Gogel failed to present any evidence demonstrating that Kia did not honestly believe she violated the December 6 agreement by soliciting Ledbetter. *See DeLong v. Best Buy Co.*, 211 F. App'x 856, 859 (11th Cir. 2006) ("[Plaintiff] has not shown that [the employer] did not honestly believe, following an investigation into the allegations against her, that she had on two separate occasions engaged in activities that violated the [employer's] policies. Accordingly, she has not created a genuine issue of fact on the question whether [the employer's] proffered reason was a pretext for retaliation.").

2. **Kia Has Not Failed to Articulate a Legitimate, Non-Discriminatory, and Non-Retaliatory Reason for Gogel's Termination**

Where there is no direct evidence of discrimination or retaliation, the court evaluates Title VII and § 1981 claims by using the burden shifting framework used in *McDonnell Douglas Corp. v. Green*, 411 U.S. 192 (1973). Once Gogel establishes a prime facie case as to each claim, the burden shifts to Kia to articulate legitimate, non-discriminatory, and non-retaliatory reasons for its actions. *Berman v. Orkin Exterminating Co.*, 160 F.3d 697, 702 (11th Cir. 2010).[7] KIA's burden is one of production and is "exceedingly light." *Smith v. Horner*, 839 F.2d 1530, 1537 (11th Cir. 1998).

Gogel alleges that Kia failed to discharge its burden because its reason for terminating her was direct evidence of retaliation. As the R&R mentions, Kia's reason for terminating Gogel was "because it lost confidence in her abilities to perform her job duties after an investigation showed that she had solicited Ledbetter to file a charge

---

[7] Kia concedes that Gogel established a prima facie case for her retaliation and discrimination claims relating to her termination. [125] at 61 & 76.

against Kia, which was in violation of the agreement she signed on December 6, 2010." [125] at 62. The Court agrees with the R&R that Kia articulated a non-discriminatory and non-retaliatory reason for Gogel's termination based upon the facts known to Kia when making the decision. [125] at 65-67. As previously mentioned, the activity Gogel took part in was not protected activity. Therefore, Kia's decision to terminate Gogel for this activity was legitimate, not retaliatory.

### 3. Kia's Reason for Termination Is Not Pretext for Retaliation and Discrimination[8]

Because the Court agrees with Judge Vineyard that Kia met its burden of production by showing a legitimate, non-discriminatory, and non-retaliatory reason for Gogel's termination, the burden shifts back to Gogel to show that Kia's articulated reason is merely a pretext for discrimination or retaliation. *See Entrekin v. City of Panama City*, 376

---

[8] Gogel also argues that because Jackson, Williams, and Grimes are not "disinterested witnesses" and a jury is not required to believe their testimony, the statements must be disregarded. [127] at 37. Gogel reads too much into *Reeves v. Sanderson Plumbing Prods., Inc.*, for the proposition that summary judgment should be precluded where the employer relies on uncontradicted sworn statements of its decision-maker employees. 530 U.S. 133, 151 (2000); *see also Woods v. Delta Air Lines Inc.*, 595 F. App'x 874, 879 (11th Cir. 2014) ("[U]nder Rule 56, a party may support a motion for summary judgment with, among other things, affidavits or declarations, and there is no requirement that these sworn statements be from disinterested witnesses. Once the moving party does so, the non-moving party bears the burden to produce evidence to dispute the facts averred in the sworn statement."). Status as an "interested witness" is therefore not sufficient to prove pretext. *Id.*

Gogel also contends that the facts surrounding the investigation into her make the investigation a "sham," and therefore, a jury could find pretext by inferring retaliatory or discriminatory intent for her termination. [127] at 39-41. The facts do not warrant such a determination. The Court is only to make "all *reasonable* inferences" in the favor of the non-moving party. *Gray v. City of Jacksonville*, 492 F. App'x 1, 4 (11th Cir. 2012) (emphasis added). None of the facts proffered by Gogel does more than speculate about what happened with the investigation. *See Shuler v. Ingram & Assocs.*, 441 F. App'x 712, 715 (11th Cir. 2011) ("Speculation or conjecture cannot create a genuine issue of material fact.").

F. App'x 987, 997 (11th Cir. 2010) (discussing the burden-shifting paradigm). "[Gogel] must proffer sufficient evidence to create a genuine issue of material fact regarding whether . . . [Kia's] . . . articulated reason[ ] [is] pretextual." *Dockery v. Nicholson*, 170 F. App'x 63, 65–66 (11th Cir. 2006). Consequently, the "ultimate burden of persuading the trier of fact that [Kia] intentionally [discriminated or retaliated] against [Gogel] remains at all times with [Gogel]." *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1982).

Gogel can meet this burden by "either proving that intentional [retaliation or discrimination] motivated [Kia] or producing sufficient evidence to allow a rational trier of fact to disbelieve the legitimate reason proffered by [Kia], which permits, but does not compel, the trier of fact to find illegal [retalitation or discrimination]." *Wilson*, 376 F.3d at 1088. Gogel "cannot establish pretext by simply demonstrating facts that suggest [retaliatory or discriminatory] animus, but must specifically respond to . . . [Kia's] explanation [ ] and rebut [it]." *Burgos-Stefanelli v. Sec'y, U.S. Dep't of Homeland Sec.*, 410 F. App'x 243, 247 (11th Cir. 2011).

Gogel makes several arguments in support of her contention that Kia's reason for terminating her was pretextual. As mentioned previously, Kia terminated Gogel "because it lost confidence in her abilities to perform her job duties after an investigation showed that she had solicited Ledbetter to file a charge against Kia, which was in violation of the agreement she signed on December 6, 2010." [125] at 62. For the following reasons, the Court agrees with the R&R that Gogel failed to produce sufficient evidence to show either that Kia was motivated by retaliatory or discriminatory animus or that a trier of fact would not believe Kia's proffered reason.

Gogel argues that she can demonstrate that Kia's reason for termination is pretextual by submitting evidence that she did not engage in the solicitation of Ledbetter. Gogel points to evidence that she never encouraged, solicited, or coerced Ledbetter to file an EEOC charge or to sue Kia [101] at 28. However, as discussed previously, "the question is not whether Plaintiff actually engaged in the alleged misconduct. Rather, it is whether [Kia], in good faith, believed the reports of misconduct." *Clark v. S. Broward Hosp. Dist.*, 601 F. App'x

886, 896 (11th Cir. 2015); *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) ("That the employee did not in fact engage in misconduct reported to the employer is irrelevant to the question whether the employer believed the employee had done wrong.").

While Gogel contends, based on her own testimony, that she did not perform the alleged acts, this is irrelevant when determining pretext. *See Butts v. Ameripath, Inc.*, 794 F. Supp. 2d 1277, 1298 (S.D. Fla. 2011), adopted at 1279 ("With respect to . . . proving pretext, 'the ultimate issue is whether the decision-maker believed that the employee violated the rule, not whether the employee actually violated the rule.'"). Again, the Court agrees with the R&R's finding that the undisputed evidence shows Kia had a good-faith, reasonable belief that Gogel solicited Ledbetter. [125] 67-69. Furthermore, Gogel failed to provide any evidence disputing this finding.[9]

---

[9] Gogel points to evidence in her objections to argue that there was sufficient evidence to show pretext. [127] at 37–38. However, Gogel argues that the evidence Kia based its "reasonable belief" on were statements from interested parties acquired in a sham investigation. However, as discussed earlier, this evidence is not to be disregarded based on this reasoning. Furthermore, she alleges that the R&R should not have regarded some of Gogel's testimony as validation of Jackson's concerns about Gogel. According to Gogel, her testimony that she told Ledbetter she was going to hire an attorney was not known to "Jackson at the time he fired her

Gogel also objects to the R&R's finding that she failed to support her pretext argument on the basis that Judge Vineyard failed to look at the totality of her evidence in combination with the suspect timing of her termination. She cites to *Reeves v. Sanderson Plumbing Prods., Inc.*, for the proposition that the Court should consider evidence in addition to the suspect timing of her termination, including that used to establish her prima facie case. 530 U.S. 133, 143 (2000). Not only does Gogel fail to identify that additional evidence in her objections to the report, but the Court fails to find any additional evidence from which the "jury may infer that retaliation [or discrimination] was the real

_____

and could not have served as a basis for the same." [127] at 38. Gogel does not cite anywhere in the depositions, pleadings, motions, etc. to support this. [137] at 38. Similarly, the Court is not able to corroborate this statement with the evidence before it. Even if it is true, this not does demonstrate beyond an inference that Kia was motivated by retaliation in terminating Gogel. There is still evidence, such as Kia knowing that Gogel and Ledbetter were using the same attorney, knowing that a co-worker approached Jackson about Gogel, and knowing of Tyler and Ledbetter's plans of suing Kia, to show a reasonable belief on the part of Kia. [125] at. 67–68.

Gogel also points to Kia's and Jackson's testimony to support her argument that a jury could find that Kia terminated Gogel because of her filing the EEOC claim. However, the passages included in Gogel's objections to the R&R are taken out of context from the rest of the deposition and do not contradict Kia's reason for termination. [127] at 39. Instead, the statements show that Kia and Jackson harbored a reasonable belief that Gogel was soliciting others to sue the company, which was "in direct contradiction to what [Gogel] was hired for . . . ." [115] at 46.

motive." *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997) (footnote and internal citation omitted).[10]

The Court recognizes that Gogel's termination and her filing of the EEOC charge are close in proximity, but "[t]he court is unaware of any authority establishing, however, that where the *prima facie* case has been successfully rebutted, the temporal closeness between the protected activity and the adverse action is sufficient on its own to sustain a pretext finding." *Coleman v. Ala. State Univ.*, 904 F. Supp. 2d 1245, 1256 (M.D. Ala. 2012). Without something more than the closeness of the protected act and termination, there is not any evidence

---

[10] It is difficult to discern from Gogel's objections what evidence she believes furthers certain arguments. The "me too" evidence referred to includes (a) the termination of Bob Tyler after he filed an EEOC charge; (b) Kia "bullying" Ledbetter into dropping her EEOC charge and trying to get her to accuse Gogel and Tyler of encouraging her to file. [125] at 70. Gogel asserts that she relies on "me too" evidence that Judge Vineyard dispensed with this argument on the grounds that her actions do not include a pattern or practice claim and "the only relevant evidence is that pertaining to the actions taken against [Gogel]." *Lane v. Terry*, Civil Action File No. 1:08-cv-3781-TWT-WEJ, 2010 WL 2721896, at *17 (N.D. Ga. June 4, 2010). Not only is there no pattern or practice claim, but Judge Vineyard determined that even if the evidence was relevant, "when offered to show pretext . . . , me too evidence is suspect," and "generally, courts are reluctant to consider prior bad acts in this [employment discrimination] context where those acts do not relate directly to the plaintiff . . . ." *Hamilton v. Coffee Health Grp.*, 949 F. Supp. 2d 1119, 1158 (N.D. Ala. 2013). This "me too" evidence does not relate to Kia's intent for terminating Gogel. Because the evidence relates to the other co-workers as to their own termination, it cannot be used to argue Kia's reason for termination was pretextual.

that could allow a reasonable juror to find that the reason for termination was discriminatorily or racially motivated or was not believable. To show pretext, Gogel "must specifically respond to . . . [Kia's] explanation [ ] and rebut [it] . . . ."; however, she only points to one fact, the proximity between the termination and the protected act. Accordingly, she fails to directly rebut the believability of Kia's reason for termination. *Burgos-Stefanelli v. Sec'y, U.S. Dep't of Homeland Sec.*, 410 F. App'x 243, 247 (11th Cir. 2011).

### 4. Gogel Has Not Shown a Convincing Mosaic of Retaliatory and Discriminatory Intent

Despite failing to demonstrate that Kia's reason for termination was pretextual, Gogel can still survive Kia's motion for summary judgment "by establishing 'a convincing mosaic of circumstantial evidence' that would allow a reasonable jury to infer that [s]he was the victim of [ ] discrimination." *Flowers v. Troup Cty.*, 1 F. Supp. 3d 1363, 1381 (N.D. Ga. 2014) (quoting *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)). Gogel claims that Kia's motion for summary judgment should be denied because she established a

convincing mosaic of circumstantial evidence to allow a jury to infer retaliatory and discriminatory intent.[11]

Gogel argues that there is a genuine issue of material fact as to whether Kia terminated her because of her race, alienage, national origin, or gender. Specifically, the circumstantial evidence upon which Gogel relies includes denial of promotions to senior manager/head of department of team relations in favor of Caucasian males. In addition, the evidence includes various instances of a culture of discrimination showing that "Korean Management not only resented [her] as a Caucasian American woman who was in a position of authority, but did not want to work with her . . . ." [101] at 47. Furthermore Gogel relies on her own conclusory statement, "that Jackson . . . believed [Gogel]

---

[11] Gogel made the "convincing mosaic" argument with respect to showing discriminatory intent but failed to do so with her retaliation claim [125 fn.78]. Because she did not include the argument in her complaint, motion for summary judgment, or opposition to Kia's motion for summary judgment, the Court does not address whether there was enough circumstantial evidence of retaliation to allow a reasonable juror to infer such an intent. It is within the discretion of the Court to determine whether it will entertain new arguments not raised before the magistrate judge. *Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009). Because Gogel had sufficient opportunity to allege there was a convincing mosaic of retaliation and raised the same argument as to her discrimination claim, the Court will not consider the retaliation claim.

should be terminated from [Kia] because the Koreans did not want to work with her." Id.

The Court finds Judge Vineyard's R&R persuasive and rejects Gogel's contention that the circumstantial evidence establishes a "convincing mosaic." Gogel fails to provide any evidence that the statements cited are in any way linked to the adverse action taken against her (i.e., termination). *See Tate v. Ancell*, 551 F. App'x 877, 887–88 (7th Cir. 2014) (rejecting the convincing-mosaic argument because the statements cited did not relate to alleged adverse action and statements were made by non-decision makers).[12] Even though Gogel does allege that the statements demonstrate that Jackson terminated her "because the Koreans did not want to work with her[,]" this averment is only conclusory, and "a plaintiff's generalized averment that her employer treated her differently than employees of a different race[, national origin, or gender cannot], alone, create a 'convincing mosaic of circumstantial evidence' from which a jury could

---

[12] The statements Gogel references also do not show they were made by a decision-maker. Her objections to the R&R fail to dispute this fact. [127] at 48–50.

find intentional discrimination." *Turner v. Fla. Prepaid Coll. Bd.*, 522 F. App'x 829, 833 (11th Cir. 2013). Gogel's evidence fails to establish a convincing mosaic within the office to justify a finding that she was terminated based on her race, alienage, national origin, or gender.

## III. Conclusion

For the foregoing reasons, the Court adopts as its order the R&R [125]. Kia's motion for summary judgment is GRANTED, and Gogel's motion for partial summary judgment is DENIED. The Clerk is directed to close this case.

IT IS SO ORDERED this 27th day of September, 2016.

_____
Timothy C. Batten, Sr.
United States District Judge